UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RICHARD LAZUR,                         )
                                       )
                 Petitioner,           )
        vs.                            ) Case No. 1:14-cv-818-WTL-DKL
                                       )
BRIAN SMITH,                           )
                                       )
                 Respondent.           )

**Entry Discussing Petition for Writ of Habeas Corpus**

The petition of Richard Lazur for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. IYC 14-02-0157. For the reasons explained in this Entry, Lazur's habeas petition must be **denied**.

**Discussion**

**A. Standard**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974).

**B. The Disciplinary Hearing**

On February 14, 2014, Sergeant Z. Williams wrote a Report of Conduct that charged Lazur with class A offense 106A, Possession of Dangerous/Deadly Weapon. The Conduct Report states:

> On 02/13/2014 I, Sergeant Z. Williams, conducted a targeted search of cell HUWMI- 2 along with Officer Grantham at approximately 10:00 PM. During the search I discovered Green leafy substance wrapped in paper. The green leafy substance was discovered under the bottom bunk inside the lip of the corner of the bunk. I also discovered that there were several screws missing from the heater vent in the cell. I used broken toenail clippers which were found under Lazur, Richard #171329 (M1-2U) mattress to pry off the plate on the heater vent and located inside was a sock that contained bleach & (24) twenty-four "AAA batteries". Located on the floor in the heater vent was a Kitchen Knife. The Knife did not have any dust on it; therefore, I knew that it had not been in the vent very long. I questioned Offender Lazur, R. #171329 about the Knife and contraband discovered in his cell and he said, "Williams I had no clue anything was in there." "Its not mine." While questioning Offender Lazur he would not make eye contact and constantly looked away. He was given a Notice of Confiscated Property form.

Sergeant Williams included with the Conduct Report a field test examination report that showed the leafy substance tested positive for marijuana, and a maintenance work order request regarding the plate on the heater vent. He also attached a photograph of the items found in Lazur's cell.

Officer Grantham submitted a separate written statement regarding the search of Lazur's cell. That statement was:

> On 2/13/14 at approximately 10:00 P.M., I, Officer Grantham-Eads, assisted Sergeant Z. Williams with conducting a targeted search of HUW-MI-2 after Sgt. Z. Williams observed Offender Lazur, Richard #171329 of M1-2U acting suspicious and nervous in the dayroom. Upon entering the cell, Sgt. Z. Williams and I began to check the bunk area, whereupon he discovered a small folded piece of cardboard folded with marijuana hidden inside. The piece of cardboard was discovered hidden underneath the bunk in the bottom front corner. Continuing our search, we noticed that the heating vent to the left and behind the bunk appeared to be missing two screws and seemed loose. Sgt. Z. Williams inspected the outside of the vent with his flashlight and noticed what appeared to be a stuffed sock concealed inside the vent. Working on the vent cover, we were able to loosen the remaining screw with our hands and Sgt. Williams pried away the cover, revealing the sock hidden inside. Inside the sock was one small Ziploc and one large, full Ziploc of powdered bleach, along with 24 AAA batteries. On the floor of the heating vent was a knife, approximately seven inches in length. Sgt. Z. Williams and I then exited the cell with the heating vent cover and contraband, and Sgt. Z. Williams placed a

2

maintenance request for the heating vent cover to be reinstalled. Both offenders residing in the cell were written up and given confiscation slips, which they refused to sign. Offender Deaton, J. #102378 crumpled his up and threw it in the toilet when Sgt. Z. Williams handed it to him.

On February 22, 2014, Lazur was notified of the charge of Possession of Dangerous/Deadly Weapon when he was served with the Conduct Report and the Notice of Disciplinary Hearing (Screening Report). Lazur was notified of his rights, pled not guilty and requested the appointment of a lay advocate. He indicated he wished to call offenders Richard Deaton and Jerry Stuart, as well as Officer Stanback, as witnesses. For physical evidence he requested the knife and the maintenance record to show whether a work order was turned in on the vent. Offender Kenneth Taylor agreed to be Lazur's lay advocate.

Offender Deaton provided a written statement that said he and Lazur had no idea that any of the things were in their room. Offender Stuart's statement was that he owned the items found in Lazur's cell and that he put the items in the vent when Lazur and Deaton weren't there and without their knowledge. Officer Stanback provided a written statement that said he did not have any knowledge of this situation. An additional written statement was obtained from Officer Glenn, who stated that he witnessed Offender Stuart telling the hearing officer, Sergeant Feldkamp, that Stuart had hidden a weapon and controlled substance in Lazur's and Deaton's cell two to three weeks before the items were found.

The hearing date initially set for February 28, 2014, was postponed so that the hearing officer could review a video and other evidence to verify the witness's statements. The hearing officer determined that Lazur would not be permitted to view the video because that would jeopardize the safety and security of the facility. The hearing officer provided a written summary of the video, which he viewed to ascertain activity outside Lazur's cell on February 13, 2014, the

date of the search that led to the discovery of the knife and other items. No offenders other than Lazur and Deaton were seen entering or exiting the cell during the evening of February 13, 2014.

The hearing officer conducted the disciplinary hearing in IYC 14-02-0157 on March 6, 2014. Lazur's comment was that Offender Stuart had asked if he could hide stuff in his room, that Lazur said "no," that he was told Stuart had been in Lazur's room but that Lazur did not give it any thought because nothing was missing. The hearing officer found Lazur guilty of the charge of Possession of a Dangerous/Deadly Weapon. In making this determination, the hearing officer considered staff reports, Lazur's statement, witness statements, photos, and the video. The hearing officer recommended and approved sanctions including 267-days earned credit time deprivation and demotion from credit class 1 to credit class 3. Lazur's appeals were denied and he filed the present petition for a writ of habeas corpus.

**C. Analysis**

Lazur seeks habeas relief on the grounds that the hearing officer did not view the video to observe activity on an earlier date and that the evidence was not sufficient to support his disciplinary conviction. In his reply in support of his habeas petition, Lazur further argues that the hearing officer was impartial.

1. Video

Lazur argues that the hearing officer's review of the video did not cover the time period two weeks before the items were discovered in his cell, the period in which he asserts the contraband items were placed there. He asserts that as a result, he was denied requested evidence. He relies on Offender Stuart's statement that he put the knife and other items in the cell without Lazur's or Deaton's knowledge, and Officer Glenn's statement that he overheard Stuart telling the hearing officer that he hid the items two to three weeks before they were found. Any failure to

4

view the relevant time period on the video is irrelevant, however, because Lazur cannot show that he was prejudiced. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *O'Neal v. McAninch*, 513 U.S. 432 (1995) (even if a due process error was committed, the burden is on the petitioner to show that the error had a substantial and injurious effect on the outcome of the proceeding).

Even if the video showed Offender Stuart entering Lazur's cell with a knife and other contraband, Lazur was not prejudiced because the undisputed evidence shows that these prohibited items were later found in Lazur's cell on February 13, 2014. This is sufficient evidence that Lazur possessed these items in violation of prison rules. Regardless of whether Offender Stuart, and not Lazur, owned the items or was responsible for hiding them in Lazur's cell, Lazur is still responsible for them because they were found in his cell. *See, e.g., Hamilton v. O'Leary,* 976 F.2d 341, 346 (7th Cir. 1992) (concluding that "some evidence" supported disciplinary charge where conduct report showed that prisoner was one of four inmates with access to vent containing contraband weapons). Further, both Lazur and Stuart state that Lazur had no knowledge of the contraband but the evidence in the Conduct Report suggests otherwise. Sergeant Williams reported that the knife did not have any dust on it, suggesting that it had not been in the vent very long. Lazur does not dispute the hearing officer's statement that the video did not show anyone except Lazur or his cell mate Deaton entering or exiting the cell on February 13, 2014, when the items were found. The search was conducted because Lazur looked suspicious and nervous in the day room. This is sufficient to support the charge against Lazur and Lazur has not shown that his due process rights were violated in the failure to review video from two weeks prior to when the items were found.

     2. <u>Some evidence</u>

Lazur's arguments that the hearing officer ignored Offender Stuart's confession and that in a similar case, the accused offender was exonerated amount to a challenge to the sufficiency of

5

Case 1:14-cv-00818-WTL-DKL   Document 12   Filed 07/06/15   Page 6 of 8 PageID #: 70

the evidence against him. Due process requires only that the Hearing Officer's decision be supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56. The "some evidence" test is satisfied by "any evidence in the record that could support the conclusion reached by the disciplinary board," even if "no direct evidence" exists; even if the circumstantial evidence is "meager," *Id.* 455-57. A conduct report alone may provide "some evidence" of guilt, notwithstanding its brevity or the presence of conflicting evidence. *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999). Although the evidence before the hearing officer must "point to the accused's guilt," *Lenea v. Lane, 882* F.2d 1171, 1175 (7th Cir. 1989), the standard of some evidence "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457. The determination should be upheld if "there is any evidence in the record that could support the conclusion reached." *Id*. Even "meager" proof will suffice so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id*. This is a "lenient" standard, requiring no more than "a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (*citing Hill,* 472 U.S. at 457; *Lenea*, 882 F.2d at 1175).

     Here, as previously discussed, there was sufficient evidence to convict Lazur of the charges against him, including the fact that the items were found in Lazur's cell, that no one else but Lazur and his cellmate had been in his cell that day, and that the items had little dust. The hearing officer was entitled to rely on the evidence and testimony that was found to be credible and was not required to credit the testimony of Offender Stuart. Further, the fact that in a similar case an inmate

6

was not convicted of disciplinary charges when another offender confessed to hiding the contraband at issue in the charged inmate's cell is not sufficient support relief in this case. Again, this argument amounts to a challenge to the sufficiency of the evidence. But every disciplinary decision is made on the facts and evidence presented to the hearing officer. The hearing officer is entitled to credit whatever evidence is found to be credible and is therefore not required to reach same conclusion in similar cases.

### 3. Hearing Officer

Lazur argues for the first time in his reply in support of his habeas petition that the hearing officer was not an impartial decision-maker because he did not credit the testimony of Offender Stuart that the contraband items belonged to him. It is true that due process requires that a prison disciplinary tribunal be sufficiently impartial. *Meyers v. Alldredge,* 492 F.2d 296, 305–07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." *Id.* at 306. Lazur asserts only that the hearing officer was impartial because of the hearing officer's "lack of consideration for the evidence." He does not show or allege that the hearing officer was involved in the events at issue. Accordingly, Lazur has not shown that he was denied an impartial hearing officer.

**D. Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Lazur to the relief he seeks.

Accordingly, Lazur's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/6/15

Distribution:

Richard Lazur
DOC # 171329
Plainfield Correctional Facility
727 Moon Road
Plainfield, IN 46168

All electronically registered counsel

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana